UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-14052-CR-GRAHAM/LYNCH(s)

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JAMES LEVERNE GIBSON, JR.,

      Defendant.

_____/



FILED by _____ D.C.

DEC - 4 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE [D.E. #31]

**THIS CAUSE** having come on to be heard for an evidentiary hearing on December 3, 2013 in respect to the Defendant's Motion To Suppress Physical Evidence [D.E. #31], and this Court having reviewed the motion, the government's response, and having received testimony of witnesses, evidence, and arguments of counsel, recommends to the District Court as follows:

    1.    The sole witness called by the government was Detective Dini of the Fort Pierce Police Department. He has been employed with that department for five years and has been a detective a little over one year. Prior to being a detective, he was a road patrol officer. His area of patrol at that time was from 12th Street to 25th Street and from Orange Avenue to Avenue R in Fort Pierce. This area includes the area in question which is the subject of the Motion to Suppress. Therefore, Detective Dini is well familiar with that area of the city having served as a road patrol officer patrolling that area for years.

    2.    Government's Exhibit No. 1 admitted into evidence is a photograph of the vacant lot on 20th Street and Avenue G where the encounter with the Defendant and his subsequent arrest took place. Government's Exhibit No. 2 admitted into evidence is a photograph of the westernmost portion of that vacant lot as taken from the position of

Avenue G.  Government's Exhibit No. 3 admitted into evidence is a photograph of the vacant lot from Avenue G as well.

3.      Detective Dini testified that at the time of this encounter on September 2, 2013 with the Defendant, he believed that the entire area was all one vacant lot.  He was not aware of any property lines or other delineations of that property which is at the northwest corner of Avenue G and North 20th Street.  The vacant lot is bounded on the north and on the west by residences.

4.      Government's Exhibit No. 4 admitted into evidence is a Mapquest aerial view of the area in question.  Detective Dini circled the lot in question which appears in the middle of the exhibit.  Detective Dini testified that on September 2, 2013, he was in uniform along with Detectives Cunzo and Thayer of the Fort Pierce Police Department.  They were all in an unmarked police vehicle.  That day they were working the hours of 7:00 p.m. to 3:00 a.m..  Their area of patrol was detailed to be what Detective Dini described as high crime areas where gang activity and shootings have taken place.  That area is bounded by U.S. 1 west to Angle Road and from Avenue R on the north to Orange Avenue on the south.

5.      While on patrol, the detectives came across the vacant lot located at Avenue G and 20th Street which is the area in question in respect to this motion.  Detective Dini testified that he was not looking for anything in particular.  He observed a car with headlights on parked in the vacant lot.  It was approximately 10:27 p.m. in the evening.  The car was facing Avenue G.  Detective Dini drew a blue rectangle on Government's Exhibit No. 2 to the left of the photograph which depicts the area where this vehicle was observed by Detective Dini and the other detectives.

6.     Detective Dini testified that this particular area is known to police as being an area where drug sales, shootings, and gang activities have taken place in the past. Detective Dini personally has responded to such calls involving those incidents at this location.  A home directly adjacent to the vacant lot to the right of where Detective Dini placed the blue rectangle on Government's Exhibit No. 2 is a home where police have made arrests of occupants in the past for drug possession and sale.

7.     On the night in question this lot and surrounding area was very dimly lit.  The vehicle in question, which was later identified as where the Defendant was a passenger, was facing Avenue G.  Due to the poor lighting conditions, Detective Dini could not tell if there were any occupants in that vehicle nor if there were, how many.  There was no one standing outside nor adjacent to the vehicle.

8.     This lot in question has a sign posted on it as depicted in Government's Exhibit No. 5 admitted into evidence.  Government's Exhibit No. 6 admitted into evidence is not the exact sign on the property in question, but is an exact duplication of the sign that is depicted on the property on Government's Exhibit No. 5.

9.     As Government's Exhibit No. 6 admitted into evidence reflects, the sign advises people in the vicinity that the owner of the property participates in the Fort Pierce Police Department's Private Property Enforcement Program and that the owner/custodian of the property has authorized officers of the Fort Pierce Police Department to act as their agent.  The sign goes on to state that police officers may give trespass warnings and arrest any person who does trespass upon this property.  Government's Exhibit No. 1 admitted into evidence and Government's Exhibit No. 3 admitted into evidence are the same tree on the lot in question.  There are two such signs posted on that same tree and those signs reflect exactly the same information as is set forth in Government's Exhibit No. 6.

3

10.     After seeing the parked vehicle with its headlights on in the vacant lot where Detective Dini believed this trespass warning sign applied, he and the other detectives decided to find out what the occupants were doing there and tell them that it was against the law to be parked there based upon the owner's request that the property be posted with the appropriate signage as reflected in Government's Exhibit No. 6.  Government's Exhibit No. 7 admitted into evidence is a Private Property Enforcement Affidavit for 803 North 20th Street which is described as a vacant lot.  The owners of that property signed this Affidavit authorizing the police to post the property with the signage referenced above and to enforce the no trespass warning.

11.     Detective Dini testified that he intended to simply warn the occupants of the vehicle that they were trespassing, give them the trespass warning which is verbal, and ask them to leave.  The trespass warning would include the identification of the occupants of the vehicle which would be transmitted to his dispatcher.  No written documents would be exchanged.

12.     Based upon their observations, Detective Dini and his fellow detectives drove their marked vehicle onto the property and activated their blue lights so that any occupants in the vehicle would know that it was a law enforcement vehicle and not someone who may be pulling up to harm the occupants of the vehicle.  As the detectives were driving up, Detective Dini observed the individual who was later identified as this Defendant in the back seat, making "furtive movements" bending down quickly at his feet as if the person was attempting to hide something by his feet or retrieve something from his feet.  Detective Dini felt uneasy because he could not see this person's hands and did not know if the person may be retrieving a weapon.  Detective Dini parked approximately ten feet away from the vehicle and did not block the vehicle in.

4

13.     Detective Dini and the other detectives then got out of their vehicles and approached on foot.  Detective Dini walked to the area of the back seat passenger, later identified as this Defendant, who was seated directly behind the driver's area.  He asked the Defendant to show his hands and the Defendant complied.  It appeared to Detective Dini that the Defendant was sweating and was very nervous and was breathing very fast. Detective Thayer went to the driver's window and addressed the driver while Detective Cunzo approached the front passenger window where the third occupant was seated. Detective Dini did not pay attention to what Detectives Thayer and Cunzo were doing with those individuals since he was occupied with the Defendant.

14.     As he approached the vehicle, Detective Dini could smell an odor which he associated with being burnt marijuana.  It appeared to him that the individuals in the car may have been smoking marijuana.  Detective Dini asked the Defendant for identification and if the Defendant had anything illegal on his person.  As the Defendant was getting out of the vehicle he responded to Detective Dini that he did have some marijuana in his pocket.  Detective Dini got the Defendant out of the vehicle, retrieved the marijuana, and handcuffed the Defendant based upon his admission that he was in possession of marijuana.  He then continued with a pat-down of the Defendant.

15.     Detective Dini testified that it was his intent, at that time, that if the marijuana baggie contained just a small amount of marijuana he was going to give the Defendant a notice to appear and not actually take him from the scene to be processed.  A notice to appear would simply give a court date for the Defendant to appear on the misdemeanor marijuana charge.  The Defendant would have been able to leave the area if a small amount of marijuana was the only violation that Detective Dini uncovered.

16.     During the completion of the pat-down of the Defendant, Detective Dini bent down to complete a pat-down of one of the Defendant's legs.  While bending over, Detective Dini could see through the open car door into the area under the driver's front seat immediately at the feet of where the Defendant was seated behind the driver. Detective Dini identified a pill bottle and the handle and back part of a handgun.  Detective Dini advised the other detectives on the scene he observed a gun.  The gun was later retrieved and was determined to be a loaded Smith & Wesson .40 caliber handgun.

17.     The pill bottle was found adjacent to the gun.  It was retrieved and appeared to have crack cocaine in it.  The crack cocaine field tested positive for the presence of cocaine base.  There was approximately 54 pieces of crack cocaine.

18.     As the gun and pill bottle with the crack cocaine were retrieved, the Defendant voluntarily uttered "You got me."  The Defendant then became visibly sick, vomited, and got weak at the knees according to Detective Dini.  The detectives then seated the Defendant on the ground since it appeared as though he was in distress. Detective Dini testified that he also observed a white residue on the Defendant's hands at that time which he believed to be associated with cocaine.

19.     Detective Cunzo was walking the passenger from the passenger's side of the vehicle around to the driver's side and observed the driver being removed by Detective Thayer. The driver is Ms. Timothy.  As Ms. Timothy was getting out of the vehicle she was seen to drop crack cocaine on the ground.  She was thereafter arrested.

20.     Detective Dini read the Defendant his Miranda rights from a card that he regularly carries and was issued by his department.  Those rights were read to the Defendant at the time that he was being handcuffed and before the Defendant actually became sick as referenced above.  The Defendant stated that he understood his rights.

6

Additionally, Detective Dini seized from the Defendant's person U.S. currency in the amount of $2,633.

21.     In response to questioning by Detective Dini, after being advised of his Miranda rights, the Defendant stated that he was visiting from Pensacola and did not have a job.  He said he was not a crack cocaine user.  The driver of the vehicle and the passenger also stated that they were not crack cocaine users.

22.     Government's Exhibit No. 4 admitted into evidence once again depicts the area in question.  A circle was made by Detective Dini and referenced during his testimony at this point during the hearing.

23.     Government's Exhibit No. 5 admitted into evidence as referenced above are the two signs of the "Fort Pierce Police Department Private Property Enforcement Program" which are attached to the tree depicted on the vacant lot in the other exhibits. As referenced previously by this Court above, Government's Exhibit No. 6 depicts the exact wording of those signs on the property in question.  Government's Exhibit No. 6 is not a photograph of those signs though.  Detective Dini testified that the wording and the sign depicted in Government's Exhibit No. 6 accurately reflects the signs that were on the property on the night in question as depicted on Government's Exhibit No. 5 and which are still on that property as of yesterday.

24.     Detective Dini testified that at the time of his encounter with the Defendant on September 2, 2013, he believed that the sign on the property gave law enforcement the right to enforce the no trespass warning on behalf of the owners.  It was Detective Dini's belief at that time that the entire vacant lot on the corner of Avenue G and 20th Street was owned by the Washingtons who authorized the Fort Pierce Police Department to post the property as reflected in Government's Exhibit No. 7 admitted into evidence.  Additionally,

there is no fencing on the vacant property at any location which would indicate to anyone that the vacant lot is broken up into separate parcels. Detective Dini did testify that there may be some fencing next to the adjacent houses adjoining this vacant lot which separates those houses from this vacant lot on the corner.

25.     Detective Dini testified that only recently was he informed by AUSA Lineberger that the property in question is actually broken into three separate parcels. Two of those parcels are owned by the Washingtons, who executed the Affidavit reflected in Government's Exhibit No. 7 and the third lot is owned by a separate individual. This Court will review those details later in this Report and Recommendation when reviewing certain exhibits which were admitted into evidence for the Defendant at this hearing in respect to those separate lots.

26.     There were no emergencies which Detective Dini observed which required him to approach the vehicle on the night in question. However, he believed that the vehicle was on property which was posted for no trespassing and that he had the right to enter the property, so advise the occupants of the vehicle, and request that they leave after giving them the warning. Detective Dini testified that after driving his patrol car onto the property, he was parked approximately five to ten feet from the western edge of this lot which would have been closest to the house referenced earlier during his testimony where other narcotics arrests have been made in the past. This is important because the evidence received later by this Court in the Defendant's exhibits reflect that the far western portion of this vacant lot is actually a third lot not owned by the Washingtons. Detective Dini did not know any specific addresses nor property descriptions at the time that he went onto the property. There is no address posted on the property and he believed that the entire

vacant lot on the corner was in one ownership and therefore subject to the no trespassing signs which were posted on the tree.

27.     The Defendant was free to leave the area after he identified himself to Detective Dini. However, once the Defendant responded that he did have marijuana on his person, he was subject to arrest and was not free to leave. There were no photographs taken of the white residue on the Defendant's hands.

28.     Detective Dini identified Defendant's Exhibit Nos. 5A through C, which is a composite exhibit of the vacant lot in question. It does not exactly depict the condition of the lot at the time of this incident since there are some debris and underbrush which have grown up since. Detective Dini placed an "X" on Defendant's Exhibit No. 5A where the vehicle was parked which was occupied by the Defendant and the other two individuals. This is also reflected by an "X" on Defendant's Exhibit No. 5B admitted into evidence. The circle on Defendant's Exhibit No. 5B reflects where Detective Dini's patrol car was parked. Defendant's Exhibit No. 5C further identifies where the Defendant's vehicle was located with an "X" and where his patrol car was parked with a circle.

29.     The government then rested its case.

_____

30.     The Defendant presented no witnesses at the Suppression Hearing. However, the Defendant did introduce several exhibits which this Court will review now. In addition to Defendant's Exhibit Nos. 5A through C referenced above, the Defendant offered Exhibit Nos. 1A through D inclusive. That is a copy of the St. Lucie County Property Appraiser records reflecting ownership of Lots 11 and 12 in the name of the Washingtons. Defendant's Exhibit No. 1D in particular shows that Lot 11 fronts on 20th

Street and Avenue G while Lot 12 is immediately adjacent to it to the west and is fronted on Avenue G.

31.    Defendant's Exhibit No. 3A through D inclusive appears to be other property owned by the Washingtons. However, it appears that Exhibit 3D reflects Lot 12 on the opposite corner of the vacant lot in question and actually fronts on the southeast corner of Avenue G and 20th Street. No further explanation of this exhibit was given by the Defendant and the photo appears to be attached to Defendant's Exhibit No. 3A and depicts a residence which is not part of the property at issue here.

32.    Defendant's Exhibit No. 2A through C purports to be the westernmost portion of this vacant lot which fronts on Avenue G. This property is owned by Nalini Racktoo and not the Washingtons.

33.    A better depiction of these three lots in question is set forth in Defendant's Exhibit No. 4B admitted into evidence. In the middle of the page of this exhibit taken from the St. Lucie County Property Appraiser records, it depicts North 20th Street on the far right margin and Avenue G through the middle of the page. Lots 11 and 12 are shown as one parcel. These appear to be the lots owned by the Washingtons as reflected in Defendant's Exhibits Nos. 1 and 3 inclusive. Lot 13 as reflected in Defendant's Exhibit No. 4B is the Racktoo lot. This appears to be the westernmost portion of this vacant lot abutting up to Lot 14 which contains the residence visible in Government's Exhibit No. 1 where prior drug arrests have taken place.

34.    As a result of the foregoing, the Defendant is arguing that the westernmost portion of this vacant lot is where the vehicle occupied by the Defendant was located and where the encounter took place after Detective Dini parked the patrol car. This area which

10

purports to be Lot 13 appears to be set forth in Defendant's Exhibit Nos. 5A and 5B, being the far left or western portion of this vacant lot.

35.     Detective Dini testified that at the time of this encounter with the Defendant and the other occupants of the vehicle, there was nothing to delineate that the vacant lot was other than one piece of property owned by the Washingtons.  He had no information within his possession which led him to believe that only the portion where the tree was located was owned by the Washingtons and subject to the no trespass program.  He had no information to know that the area where he was parked in encountering the Defendant was actually a piece of property separate and apart from the Washingtons who had authorized the posting of their property.

36.     The Defendant then rested his case.

## ANALYSIS

37.     The encounter between the Defendant and Detective Dini occurred on private property.  Mere police questioning of an individual is not considered a seizure.  United States v. Griffin, 696 F.3d 1354 (11th Cir. 2012).  Law enforcement officers, such as Detective Dini and his partners, did not violate the Defendant's Fourth Amendment prohibition of unreasonable seizures merely by approaching the Defendant and the other occupants of that vehicle in a public place.  United States v. Perez, 443 F.3d 882 (11th Cir. 2006).  The issue of whether this was a public place or private property is in issue. However, the only evidence before this Court is that Detective Dini reasonably believed that the entire vacant lot on the corner of Avenue G and North 20th Street was in one ownership and that particular property was posted for no trespassing under the Fort Pierce

Police Department program referenced in his testimony.  Further, there was an affidavit from the owners on file justifying the posting of those signs on the only tree existing in the middle of that vacant lot as depicted in the photographs.  There is no evidence before the Court to suggest that Detective Dini had any reason to believe that the lot was actually broken up into three separate lots with the westernmost lot, where the vehicle containing the Defendant was parked, was actually in ownership other than the Washingtons.

38.     Since the area was posted for no trespassing under the program referenced in the factual portion of this Report and Recommendation, Detective Dini had a reasonable suspicion that the occupants of that vehicle may be trespassing.  His testimony is that he was going to give them a trespass warning and direct them to leave the property.  No arrest was anticipated.  While trespass is technically a misdemeanor in the State of Florida, there was no other illegal activity which Detective Dini was observing in respect to the vehicle found to later be occupied by the Defendant.  A reasonable suspicion of criminal activity as would support an investigatory stop under Terry may be formed by observing exclusively legal activity.  United States v. Gordon, 231 F.3d 750 (11th Cir. 2000).  Here, there was no illegal activity observed except for the technical trespass in violation of the Fort Pierce Police program as referenced on the signs posted on the property.

39.     Based upon the totality of the observations and the good faith belief of Detective Dini that the occupants of this vehicle were in fact trespassing on the property, he had reasonable suspicion to approach the vehicle, question the occupants, and inform them of their need to leave the property.  A reasonable suspicion that the occupants of the vehicle were committing a trespass is a less demanding standard than probable cause required for an arrest.  The Fourth Amendment requires at least a minimal level of objective justification, which this Court finds was in existence at the time that Detective Dini observed

12

the vehicle on what he believed to be posted property.  The Court must look to the totality of the circumstances to determine the existence of reasonable suspicion in Detective Dini's mind at the time that he made the decision to approach the vehicle and issue a trespass warning.  United States v. Jordan, 635 F.3d 1181 (11th Cir. 2011).

40.     Another consideration which the Courts have addressed is the particular area where otherwise legal activity is observed by a law enforcement officer.  The character and nature of that particular area enters into the reasonable suspicion analysis in whether or not the officer had an articulable reason for a Terry stop and/or approaching an individual. The evidence before this Court is that one of the houses immediately adjacent to this vacant lot has been the site of several narcotics arrests in the past.  Detective Dini had this information within his framework of knowledge at the time that he approached the vehicle in which the Defendant was an occupant.  Further, Detective Dini as a road patrol officer and as a detective has personal knowledge of gang activity, narcotics activity, and shootings in the particular area.  In fact, this was the reason that Detective Dini and the other detectives were on patrol that evening looking for such activity in the areas delineated in his testimony.  Therefore, the fact that this area, where the vehicle was observed and believed to be trespassing, was a high crime area and known to be a problem area involving narcotics, gangs, and guns.  This is an important consideration in determining whether or not Detective Dini had a reasonable suspicion to approach the vehicle and request the identity of the occupants when issuing a trespass warning.  United States v. Franklin, 323 F.3d 1298 (11th Cir. 2003).

41.     As Detective Dini was driving up to the subject vehicle, he could observe an individual, later identified as this Defendant, making furtive movements down by his legs as if he was hiding something or reaching for something.  Knowing that this is a high crime

area involving narcotics, gang activity and guns, Detective Dini testified that this made him uneasy.  He specifically testified that he believed the occupant may have been reaching for a weapon and he was on alert for that.  Further, as the detectives approached the vehicle, Detective Dini could smell an odor which he associated with burning marijuana emanating from or about the vehicle.  This gives further reasonable suspicion combined with the vehicle location and the furtive movements of one of the occupants for Detective Dini to approach the vehicle and identify the occupants and their activities.  Bryan v. Spilman, 217 Fed. Appx. 882 (11th Cir. 2007).

42.     Once Detective Dini approached the rear of the vehicle where the Defendant was seated, he requested the Defendant to identify himself and asked the Defendant if he had anything on him illegally. At this point the encounter was still not a seizure.  Detective Dini had the right to question the occupants of the vehicle to find out why they were there and to issue a trespass warning as were his intentions.  However, the Defendant responded that he had a little marijuana on him.  As a result, Detective Dini's inquiry immediately transformed into an arrest for the marijuana and the Defendant was handcuffed.  Detective Dini testified that it was his intention to simply issue a notice to appear and not take the Defendant in for processing if it in fact turned out to be a small amount of marijuana. While this initial contact with the Defendant was consensual and not a seizure, it did evolve into a seizure upon the Defendant's arrest based upon his admission that he had marijuana.  United States v. Allen, 447 Fed. Appx. 118 (11th Cir. 2011).

43.     Based upon the Defendant admitting that he had marijuana on him, Detective Dini had a reasonable and articulable suspicion that criminal activity may be afoot. Detective Dini then placed the Defendant under arrest and conducted a pat-down for

14

weapons to protect himself, the other detectives, and other individuals at the scene.  This pat-down was reasonable in light of the totality of the circumstances confronting Detective Dini at that time.  United States v. White, 593 F.3d 1199 (11th Cir. 2010).  See also Arizona v. Johnson, 129 S.Ct. 781 (2009).

44.    While performing the pat-down on the Defendant, Detective Dini bent down to pat down the Defendant's lower leg and could observe through the open door where the Defendant had been sitting, a pill bottle and the handle of a gun under the front seat directly at the feet of where the Defendant had been seated in the car.  This observation was in plain view.  There is no evidence to the contrary.  Detective Dini was entitled to seize such evidence in plain view, secure the gun, and investigate what was in the pill bottle in light of the Defendant's admission that he was in possession of marijuana.  A search of the Defendant incident to the arrest and the vehicle incident to that arrest disclosed the loaded firearm referenced above as well as crack cocaine in the pill bottle more particularly set forth in Detective Dini's testimony related herein.  A search of the Defendant's person and the vehicle incident to the Defendant's arrest is found by this Court to be reasonable and justified under the circumstances.  United States v. Olbel, 275 Fed. Appx. 910 (11th Cir. 2008).

45.    Based upon the totality of the evidence received by this Court, this Court finds that Detective Dini had a reasonable belief that the vacant lot in question was entirely subject to the no trespass signs placed on it.  This Court notes that the photographs submitted as evidence in this case all show the tree in question where the two no trespassing signs are clearly posted.  Further, an aerial view of the lot in evidence shows the tree is almost directly in the center of this property.  There is no evidence before this Court to suggest that Detective Dini had any knowledge that the property was broken up

into separate ownerships and that the property where the vehicle in which the Defendant was found to be occupying was on property other than the two lots which were in fact posted.

46.     Detective Dini's reasonable belief that the occupants of the vehicle were in fact trespassing justified his entry onto that private property pursuant to what he believed to be the owner's request and consent to enforce the trespass warning.  He had no intention of arresting anyone in the vehicle until such time as the Defendant admitted that he had a small amount of marijuana on him.  The investigatory stop then evolved into an arrest.

47.     Detective Dini's actions subsequent thereto in arresting the Defendant for the marijuana and observing in plain view the gun and pill bottle containing crack immediately at the feet of where the Defendant had been seated in the vehicle are found to be reasonable under the applicable case law cited herein.  This Court finds no Fourth Amendment violation in that regard.

48.     The Defendant's motion seeks to suppress physical evidence only. Nevertheless, this Court will state for the record that the Defendant was read his Miranda rights, waived those rights, and made statements to law enforcement subsequent thereto. There is no evidence before this Court that any statements made by the Defendant were coerced or otherwise obtained by law enforcement in violation of the Defendant's constitutional rights.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant's Motion To Suppress Physical Evidence [D.E. #31] be **DENIED**.

At the conclusion of the evidentiary hearing, this Court confirmed with the parties that this matter is still set for trial on the District Court's calendar beginning December 16,

2013.  The Court then informed the parties that based upon this, the normal fourteen day period for filing objections to this Report and Recommendation would have to be shortened.  Based upon <u>Weiss v. Standard Ins. Co.</u>, 2009 WL 1833963 (S.D. Fla. 2009), this Court shortens the time period for either party to file any objections to this Report and Recommendation, **no later than 4:00 p.m. on WEDNESDAY, DECEMBER 11, 2013**. Pursuant to Federal Rules of Criminal Procedure, Rule 59(b)(2), failure to file objections timely waives a party's right to review and bars the parties from attacking on appeal any legal rulings and factual findings contained herein.

**DONE AND SUBMITTED** this 4th day of December, 2013, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. Donald L. Graham
AUSA Carmen M. Lineberger
AFPD Fletcher Peacock